## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

| | |
|---|---|
| WILDERNESS DEVELOPMENT, LLC, a Montana limited liability company, | CV 08-54-M-JCL |
| Plaintiff, | |
| vs. | |
| | ORDER |
| NANCY HASH, and the ESTATE OF DAVID A. HASH, d/b/a Hash Tree Company, | |
| Defendants. | |

_____

Defendants Nancy Hash and the Estate of David Hash, d/b/a Hash Tree Company move for summary judgment pursuant to Fed. R. Civ. P. 56.  Defendants seek summary judgment dismissing all of Plaintiff Wilderness Development, LLC's claims for relief.  For the reasons stated below, the Court deems it appropriate to deny Defendants' motion.

## I.    INTRODUCTION

Plaintiff is the developer of a golf course and residential community in Eureka, Montana.  Defendants own and operate the Hash Tree Company located in

ORDER - Page 1

Moscow, Idaho.  This action arises from the Plaintiff's purchase of approximately 665 ponderosa pine trees from the Defendants in 2006 for planting at its development in Eureka.  A large number of the trees later became infested with pine engraver beetles and died some seven months after planting.

Plaintiff had engaged a landscape and architecture firm, Hart Howerton ("HH"), to assist with the development, including the purchase of the ponderosa pine from Defendants.  In anticipation of a Fall 2006 planting, HH's employees, Derek Drish and Martha Folger, visited Defendants' nursery at Tensed, Idaho in July of 2006.  Drish and Folger conducted a general inspection of the ponderosa pine at the site, but did not inspect them for insects.  The predicate of Plaintiff's claims is that environmental conditions at the Eureka site - conditions of which the Plaintiff was purportedly unaware - posed an adverse risk to successful transplantation of the pines.  Notwithstanding the fact ponderosa pine are indigenous to the area of the development site, Plaintiff contends Hash was aware of difficulties attendant to the transplant of ponderosa pine in its native environment.  Additionally, Plaintiff contends Hash was aware that Montana was suffering at the time from a natural infestation of the pine engraver beetles. Plaintiff emphasizes that on August 9, 2006, David Hash, now deceased, visited the development and observed the existence of significant logging slash that

ORDER - Page 2

resulted from the extensive logging done to clear or thin the site.  According to Plaintiff, Hash well knew the conditions at the site provided an environment in which a beetle could thrive thereby presenting a risk to the viability of transplanted ponderosa pine.  Plaintiff further contends that Hash knew the soil conditions at the development site were not suitable to a successful transplant of ponderosa pine.  Plaintiff takes the position the Defendants were obligated to, but did not advise Plaintiff of the fact these various conditions would operate to threaten the viability of transplanted ponderosa pine.

Defendants harvested and shipped the ponderosa pine from the Tensed site to the Eureka development in September and October of 2006.  During the time frame of September through November 11, 2006, Plaintiff's contractor United GLI planted 400 of the pines throughout the golf course area.  The remaining pines were stored in a nursery at the development.  Affidavit of Larry Newlin (February 24, 2009) at ¶ 4.  Construction of the golf course was completed by December 1, 2007.

In April 2007, Plaintiff observed that many of the pines were turning brown and determined they were infested with beetles.  Plaintiff's representative, Barry Cole, contacted Defendants on May 17, 2007, advised them of the beetle infestation, and demanded compensation for the cost of the trees.

ORDER - Page 3

The Plaintiff commenced this action on April 24, 2008.  The operative allegation of Plaintiff's Complaint is that the Defendants harvested the pines "at the wrong time of year[,]" causing them to suffer inordinate stress thus rendering them more susceptible to infestation by the engraver beetle, as well as other afflictions.  Dkt. # 1, Compl. ¶ 4.  The Plaintiff seeks to hold the Defendants liable for the costs of the trees and other damages sustained as a result of the trees dying.

Plaintiff advances five causes of action in its Complaint.  It alleges Defendants are liable for breach of warranty, breach of contract, negligence, negligent misrepresentation, and for violations of the Uniform Commercial Code (UCC).

## II.  APPLICABLE LAW

### A.  Summary Judgment Standards

Federal Rule of Civil Procedure 56(c) entitles a party to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either:  (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential

element to ultimately carry his burden at trial.  *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id*. at 248.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

### B.    Application of Montana Law

Because jurisdiction over this action is founded upon diversity of citizenship under 28 U.S.C. § 1332(a), the Court applies the substantive law of Montana, the forum state.  *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

ORDER - Page 5

## III.   DISCUSSION

### A.   Negligence and Negligent Misrepresentation

"Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstance." *Barr v. Great Falls International Airport Authority*, 2005 MT 36, ¶ 41, 326 Mont. 93, 107 P.3d 471 (2005).

> To maintain an action in negligence, the plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted.

*Peterson v. Eichhorn*, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (2008).

Individuals who are engaged in a profession and those who undertake work calling for special skill are required not only to exercise reasonable care in the conduct of their affairs but also must possess a standard minimum of special knowledge and ability referred to as the "standard of care". *Doble v. Lincoln County Title Co.*, 215 Mont. 1, 4, 692 P.2d 1267, 1268 (1980) (citing William L. Prosser, *Law of Torts*, pp. 161-62 (4th ed., 1971). Because the standards of care applicable in a negligence action against a professional or one involved in a skilled trade are outside the common experience and knowledge of lay jurors, Montana law recognizes that expert testimony is required to establish the standard

of care.  This requirement has been extended to negligence actions against medical doctors, dentists, orthodontists, veterinarians, lawyers, manufacturers of pharmaceuticals, abstractors of title, and professional counselors.  *Carlson v. Morton*, 229 Mont. 234, 239, 745 P.2d 1133, 1136-1137 (1987); *Newville v. Department of Family Services*, 267 Mont. 237, 257, 883 P.2d 793, 805 (1994) (professional counselors); *Zimmerman v. Robertson*, 259 Mont. 105, 107-08, 854 P.2d 338, 339-340 (1993).[1]

The Defendants contend that the issues presented for determination in this negligence action will require inquiry into scientific, technical, or other specialized knowledge which lies beyond the common experience and knowledge of lay people.  Accordingly, the Defendants argue that expert testimony is required

---

[1]Where, as here, a legal claim is governed by the substantive law of the state in which the federal court sits, the federal court must look to state law with respect to the issue of whether expert witness testimony is required to substantiate a claim that a professional or other skilled tradesman deviated from the standard of care applicable to his conduct.  *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988).  A federal court sitting in diversity jurisdiction must apply state evidentiary rules which are "intimately bound up" with the state's substantive law governing the legal claim.  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). Accordingly, this Court will apply Montana law with respect to the issue of whether expert opinion testimony is required in this case.  It should also be noted that the law in this Circuit is essentially the same as Montana law on this point. *See United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) ("beyond the common knowledge of the average layperson") and *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1065 n.9 (9th Cir. 2002) (same).

ORDER - Page 7

to assist the jury in understanding the appropriate standards of care.  The Court

agrees.[2]

In the same vein, expert testimony is required to prove causation where the

issues presented are sufficiently beyond the common experience of the trier of fact

and expert testimony will assist the trier of fact in determining the issue or

understanding the evidence.  *Dayberry v. City of East Helena*, 2003 MT 321, ¶ 17,

318 Mont. 301, 80 P.3d 1218 (2003).  The tort of negligent misrepresentation

requires the plaintiff to prove the following critical elements:

> [The record must affirmatively establish] (1) that the defendant made a false
> representation as to a past or existing material fact without any reasonable
> ground for believing it to be true, regardless of his or her actual belief, with
> the intent to induce the plaintiff's reliance; and (2) that the plaintiff, unaware
> of the falsity of the representation, justifiably relied on the representation
> and suffered damage as a result of that reliance.

*Walters v. Luloff*, 2008 MT 17, ¶ 21, 341 Mont. 158, 176 P.3d 1034 (2008).

With regard to the Plaintiff's claim of negligent misrepresentation, the

Defendants similarly argue that expert testimony on the issue of causation is

---

[2]The Montana Supreme Court has not addressed whether expert testimony to
establish the standard of care would be required in a context similar to that
presented in this case.  When an issue of state law arises and "the state's highest
court has not adjudicated the issue, a federal court must make a reasonable
determination of the result the highest state court would reach if it were deciding
the case."  *Medical Laboratory Mgmt. Consultants v. American Broadcasting
Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (citations omitted).

required under the circumstances of this case.  Again, the Court agrees because the

causation issue will require the trier of fact to resolve issues beyond the common

experience and knowledge of lay people and, thus, expert testimony will be

required to assist the jury in resolving the causation issue.  As accurately noted by

the Defendants, the Plaintiff has effectively conceded this point stating "[e]xpert

testimony is necessary to determine what caused the stress to the trees which made

them vulnerable to attack by the bark beetle."  Dkt. # 45, Plaintiff's Response to

Defendants' First Motion in Limine, p. 5.

From the premise that expert testimony upon the issues of standard of care

and causation is required, the Defendants argue that the Plaintiff has failed to

present the requisite expert opinion testimony.  Specifically, Defendants contend

that because the Plaintiff did not properly disclose the expert opinion testimony

upon which it intended to rely, that testimony must be excluded.  In this regard,

Defendants contemporaneously filed their First Motion in Limine to Exclude

Expert Testimony with their summary judgment motion.  Defendants sought to

exclude the expert opinions and testimony from Plaintiff's designated expert, Bert

Swanson, Ph. D.[3]

---

[3]By Order entered March 5, 2009, the Court denied, in part, Defendants'
motion in limine seeking to exclude the Plaintiff from presenting any opinion
testimony of Dr. Swanson.  Dkt. # 51.  The Court preliminarily determined that the

In his February 26, 2009 affidavit Dr. Swanson states his opinions with respect to (1) the standards of care applicable to Defendants' business industry, and (2) the issue of what caused the trees in this case to die. In substance, Dr. Swanson asserts that the standards in the industry in which Defendants operate their business required them to: (1) harvest and transplant the ponderosa pine earlier in the season due to the conditions at the Eureka site; and (2) properly instruct Plaintiff with regard to the use of insecticides and fertilization.

Dr. Swanson also believes that Defendants' conduct caused the ultimate demise of the pines in this case. Dr. Swanson states that ponderosa pine experience little or no root growth in the Fall, and that the root balls on the trees were too small at the time of their harvest. He also opines that at the time of their harvest the trees were dormant, moisture-stressed due to the conditions at the harvest site, and were shocked by the transplanting process. It is Dr. Swanson's opinion that all of these conditions, together with the existence of a beetle epidemic in Montana, made the trees susceptible to beetle infestation and unable to survive at the Eureka site.

---

Plaintiff may rely upon the majority of the opinions stated by Dr. Swanson in his affidavit of February 26, 2009. The Court's preliminary determination is, of course, subject to Dr. Swanson providing a report that satisfies the requirements of Fed. R. Civ. P. 26(a)(2)(B) and the opinions are not deficient in some other respect.

ORDER - Page 10

As stated above, to survive summary judgment in a negligence action the plaintiff must raise a genuine issue of material fact with regard to any of the four elements of a negligence claim.  Similarly, Plaintiff's negligent misrepresentation claim requires proof of the cause of Plaintiff's damages.  Where expert opinion testimony is required with respect to a particular subject matter, a plaintiff can successfully raise a genuine issue of material fact through expert testimony as to the applicable standard of care or duty imposed on a defendant, or as to the cause of the plaintiff's damages.  *Butler v. Domin*, 2000 MT 312, ¶¶ 21-23, 302 Mont. 452, 15 P.3d 1189 (2000).  Where a genuine issue of material fact exists on these elements of a negligence claim summary judgment in favor of the defendant is properly denied.  *Id*.

Based on Dr. Swanson's expert opinions, the Court finds Plaintiff has sufficiently raised genuine issues of material facts to survive summary judgment. In contrast to the opinions of Defendants' expert witness, Don Richards, Dr. Swanson identifies standards of care with which he believes Defendants did not comply, and he identifies aspects of Defendants' conduct which allegedly caused the trees to die.  Defendants have failed to sufficiently negate an essential element of Plaintiff's claims, and have not shown that Plaintiff does not have enough evidence on the essential elements to ultimately carry its burden at trial.

Accordingly, Defendants' summary judgment motion on Plaintiff's negligence and

negligent misrepresentation claims is denied.

## B.    Breach of Warranty, and UCC Claims

Defendants argue they are entitled to summary judgment on Plaintiff's

breach of warranty, and UCC claims.[4]  As to Plaintiff's UCC claims Defendants

argue Plaintiff is barred, under Mont. Code Ann. § 30-2-607(3), from any recovery

because Plaintiff accepted the ponderosa pine and failed to timely reject them.[5]

Section 30-2-607(3) provides, in part, as follows:

> (3) Where a tender has been accepted:
>
>> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy*[.]

Mont. Code Ann. § 30-2-607(3)(a) (emphasis added).  Plaintiff argues that § 30-2-

607(3)(a) is inapplicable to the circumstances of this case.

_____

[4]Although Defendants move for summary judgment dismissing all of Plaintiff's claims, they do not present any arguments specific to Plaintiff's breach of contract claim.  Thus, the Court will not address that claim.

[5]The UCC "applies to transactions in goods[.]"  Mont. Code Ann. § 30-2-102.  Although not addressed by the parties in briefing, for purposes of this summary judgment ruling, the Court will assume, without deciding, that the pine trees at issue in this case are "goods" within the meaning of the UCC.  *See* Mont. Code Ann. § 30-2-107(2).

ORDER - Page 12

For the reasons discussed below, the Court finds Mont. Code Ann. § 30-2-607(3) is not applicable under Plaintiff's theory of recovery - that being the revocation of acceptance.  Section 30-2-607(3) only bars relief due to an untimely notice of a breach.[6]

### 1.    Revocation of Acceptance

The parties agree, in essence, that there was no objectively noticeable or discoverable defect, or nonconformity, in the ponderosa pine when they were delivered to Plaintiff in the Fall of 2006.  Defendants assert that at the time of delivery the trees were not defective - the trees conformed to the terms of the parties' agreement for the purchase of the trees, they were fit for the particular purpose for which they were purchased, and they were viable and merchantable.  Plaintiff counters the trees were defective and nonconforming, but that the deficiencies were not discoverable until April or May 2007.

The parties agree that the subject trees suffered from an engraver beetle infestation which caused them to die.  The record establishes that the first time Plaintiff discovered the trees were infested was in April 2007.  Aff. of Newlin ¶ 5.

[6]Furthermore, Defendants' reliance on *Owens v. General Motors Corp.*, 249 Mont. 124, 813 P.2d 985 (1991) is misplaced.  The sole issue in *Owens* was whether there was any evidence that General Motors Corporation breached any warranty.  249 Mont. at 125, 813 P.2d at 986.  *Owens* did not involve the issue of a buyer's revocation of its acceptance of goods.

ORDER - Page 13

According to Plaintiff, the nonconformity from which the trees suffered was their

unfitness for the adverse environmental conditions at the Eureka development site

- conditions of which Plaintiff asserts it was unaware.  Dkt. # 49 at p. 14.

Consequently, Plaintiff argues it could not have discovered this nonconformity

until after the beetle infestation occurred.  *Id*. at pp. 14-15.

Plaintiff does not dispute that it accepted the trees, and it does not argue that

it attempted to reject the trees prior to its acceptance of them.  Instead, Plaintiff

asserts it timely revoked its prior acceptance as permitted under Mont. Code Ann.

§ 30-2-608.  Defendants' arguments asserting that Plaintiff accepted the trees

under Mont. Code Ann. § 30-2-606 ("What constitutes acceptance of goods"), and

their contention that Plaintiff did not properly or timely "reject" the trees under

Mont. Code Ann. § 30-2-602 ("Manner and effect of rightful rejection") are not

relevant to Plaintiff's theory of recovery.  Defendants' reliance on *Konitz v.*

*Claver*, 1998 MT 27, 287 Mont. 301, 954 P.2d 1138 (1998) is misplaced because

*Konitz* addressed only whether the buyer had accepted the goods under § 30-2-

606, or rejected the goods before acceptance under § 30-2-602.  *Konitz*, ¶¶ 19-28.

Mont. Code Ann. § 30-2-608 permits a buyer to revoke its acceptance of

goods.  The statute provides as follows:

ORDER - Page 14

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

    (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonally cured; or

    (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.  It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Mont. Code Ann. § 30-2-608.

Plaintiff asserts the pine trees suffered from a nonconformity which permitted it to revoke its acceptance.  Plaintiff's expert, Dr. Swanson, states that the ponderosa pine were dormant at the time of harvest and that pine trees do not experience any significant root growth in the Fall.  He also states because of the stress and shock the trees underwent in the harvest process, as well as the inadequate size of the root balls at the time of harvest, the trees were not suitable for transplantation at the Eureka development site.  "Goods" are "'conforming' or conform to the contract when they are in accordance with the obligations under the contract."  Mont. Code Ann. § 30-2-106(2).  Although the parties have not

ORDER - Page 15

sufficiently established the precise terms of their contract, Dr. Swanson's testimony at least raises a genuine issue of fact as to whether the trees were nonconforming goods under the parties' agreement.

Plaintiff also argues that it accepted the trees without notice of the nonconformity due to the difficulty in discovering the nonconformity before acceptance.  There is no evidence before the Court at this time suggesting the purported nonconformity was discoverable any time before April 2007.  Therefore, there exist genuine issues of material facts that are relevant to the determinations required under Mont. Code Ann. § 30-2-608(1)(b).

It is also undisputed that Plaintiff notified Defendants of the beetle infestation in May 2007, and demanded compensation.  Those circumstances give rise to a genuine issue of material fact as to whether Plaintiff's revocation of its acceptance occurred within a reasonable time after it discovered, or should have discovered the ground for its revocation under Mont. Code Ann. § 30-2-608(2).  Furthermore, Defendants have not argued the trees were subject to "any substantial change in [the] condition of the goods which is not caused by their own defects."  *Id*.

Defendants argue, in reliance on *Oda Nursery, Inc. v. Garcia Tree & Lawn, Inc.*, 708 P.2d 1039 (N.M. 1985), that Plaintiff's attempted revocation of its

ORDER - Page 16

acceptance was untimely.[7]   In *Oda Nursery* the buyer took delivery of 985 spreading juniper plants in March 1982.  708 P.2d at 1040.  The buyer planted the junipers in July and August 1982, but in October 1982 the plants began to die. The seller sued the buyer to recover the purchase price for the plants.  The Court found the buyer finally advised the seller of an alleged nonconformity in its answer filed in February 1983 - eleven months after the buyer took delivery of the plants.  *Id*. 1042-43.  Accordingly, the court held, as a mater of law, the buyer's revocation was not timely and "clearly unreasonable."  *Id*.[8]

The *Oda* court noted that upon delivery of the plants an employee of the buyer had "complained of their poor condition" and that they did not look "up to snuff."  *Oda*, 708 P.2d at 1040 and 1041.  Although the buyer did not discover that the plants were "root-bound" until February 1983, the court determined that "the health and quality of the goods [...] were more dependent on the buyer's awareness of the condition of the goods while in his possession[,]" implying that the buyer

---

[7]The *Oda* case was governed by the same revocation provisions of the UCC as Plaintiff invokes in this case.  *Oda*, 708 P.2d at 1041.

[8]The court's analysis in *Oda* was based on both the issue of rejection of goods, and the issue of revocation of acceptance.  The court's ruling concluded that neither the buyer's attempted rejection, nor its attempted revocation of acceptance were adequate.  *Oda*, 708 P.2d at 1041-43.

ORDER - Page 17

could have discovered the "root-bound" condition of the plants earlier than February 25, 1983 since the plants were in his possession. *Id*. at 1042.

In the present case, no evidence has been presented that suggests that the nonconformity from which the trees at issue in this case allegedly suffered was discovered, or could have been discovered by Plaintiff prior to April 2007. Although the trees were in Plaintiff's possession, the Plaintiff identifies nonconforming defects which existed as a result of Defendants' conduct in harvesting the trees - defects of which Plaintiff asserts it was not aware. There is nothing to suggest Plaintiff's possession of the trees, standing alone, would have made it aware of these alleged defects.

The Plaintiff has sufficiently identified genuine issues of material fact as to the reasonable timeliness of its revocation of acceptance in May 2007. If Plaintiff is successful on its revocation theory then it is entitled to "the same rights [...] with regard to the goods involved as if [it] had rejected them." Mont. Code Ann. § 30-2-608(3). Defendants summary judgment on this issue is denied.

## 2.   Breach of Warranty

Defendants claim they are entitled to summary judgment on Plaintiff's breach of warranty because "Plaintiff has offered no evidence that Defendants breached any implied warranties." Dkt. # 41, p. 16.

ORDER - Page 18

Plaintiff asserts Defendants breached the implied warranty of fitness for a

particular purpose.  That warranty applies as follows:

> Where the seller at the time of contracting has reason to know any particular
> purpose for which the goods are required and that the buyer is relying on the
> seller's skill or judgment to select or furnish suitable goods, there is unless
> excluded or modified under the next section an implied warranty that the
> goods shall be fit for such purpose.

Mont. Code Ann. § 30-2-315.

The implied warranty of fitness for a particular purpose applies when the

buyer establishes that the seller knew of the particular purpose for which the goods

are required.  *Streich v. Hilton-Davis*, 214 Mont. 44, 60, 692 P.2d 440, 448 (1984).

Plaintiff argues Defendants were fully aware of the particular purpose for which

they needed the ponderosa pines - particularly when David Hash visited the

Eureka development site.

Plaintiff also contends Defendants were aware of various adverse conditions

and circumstances of this particular transaction, yet Defendants did not advise

Plaintiff that the trees should not be transplanted into the Eureka development site.

Howard Chisholm, a Principal of Wilderness Development, LLC, states in his

affidavit that Plaintiff "relied upon David Hash and Hash Tree Company for the

specifics on how to plant the trees."  Affidavit of Howard Chisholm (February 24,

2009) at ¶ 4 (Dkt. #48-2).

ORDER - Page 19

The forgoing evidence is sufficient to allow Plaintiff to survive summary judgment on its breach of warranty claim alleging that Defendants breached the warranty of fitness for a particular purpose.  Accordingly, Defendants' summary judgment motion lacks merit.

## IV.  **CONCLUSION**

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(b) is DENIED**.**

DATED this 9th day of March, 2009.


 /s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge

ORDER - Page 20